No. 33,385

WILLARD FARMER, *Appellee*, v. THE CENTRAL MUTUAL INSURANCE COMPANY OF CHICAGO, ILLINOIS, *Appellant*.

(67 P. 2d 511)

Opinion
filed May 8, 1937.

*Hugh C. Larimer,* of Topeka, for the appellant.

*A. Teeple, George E. Teeple,* both of Mankato, and *H. A. Smith,* of Superior, Neb., for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This was an action for damages on account of injuries received in an automobile collision. Judgment was for the plaintiff, and defendant appeals.

The injury to the plaintiff resulted from an automobile accident which occurred about 7:30 o'clock p. m., after dark, on October 18, 1935, on U. S. highway No. 36, about five and one half miles west of Mankato, Kan. The father of the plaintiff was the owner of a 1924 model Chevrolet coupé, and at the time of the collision the coupé was being driven by plaintiff's father. Mr. Dickson was riding in the seat with plaintiff's father. The plaintiff and his brother were sitting on the turtle back of the coupé with their backs against the front seat and their feet braced against the spare tire. They had their backs to the direction in which the coupé was traveling. There were some suitcases under the lid of the turtle back, and the surface of the turtle back on which the plaintiff and his brother were riding was almost level. The width of the surface of the turtle back was about three feet.

The plaintiff's father and the party accompanying him left their homes in Rexford, Kan., on the morning of October 18, 1935. They drove at a speed of twenty-five miles an hour. Plaintiff with his brother had ridden sitting on the turtle back the entire trip and had not experienced any difficulty staying there. The lid was firm and plaintiff testified the speeding up or slowing down of the car did not affect his riding.

The Chevrolet coupé on which plaintiff was riding collided with a gasoline transport truck owned by the Stadler Brothers and which was driven and operated by their employee, Norris Christenson.

The width of the oil mat highway at the place of the collision is about twenty feet. The accident occurred just after the coupé on which plaintiff was riding had crossed a bridge. The bridge is twenty and five tenths feet wide and forty-two feet long. The distance between the rails or guardposts, marking the edge of the fill on each side of the road east of the bridge, is twenty-seven and thirty hundredths feet. East of the bridge is a hill, the crest of which is five hundred and ten feet from the east end of the bridge. The bridge is twenty-four and six tenths feet lower in elevation than the top of the hill.

At the time of the collision the Chevrolet coupé driven by plaintiff's father was traveling east, and the gasoline transport truck was traveling west. Shortly before driving upon the bridge, plaintiff's father saw the truck coming over the hill. Plaintiff's father testified the truck was then traveling on the south side of the road, and that he speeded up his car in order to get across the bridge before meeting the truck. He thought the bridge was too narrow for him to pass the truck on the bridge and he did not have time to stop his car before crossing the bridge. He was somewhat blinded by the lights of the truck, but could see the side of the bridge and the guardposts east of the bridge. After crossing the bridge, he testified he pulled over to the south side of the road as far as possible, so close to the guardrails that he was afraid his hub caps would catch in the guardposts. His story was that after crossing the bridge and pulling to the right as far as possible, he then continued in a straight direction until the impact with the truck; that the truck swerved to the right just in front of the coupé. The coupé did not collide with the front end of the truck, because, as plaintiff's father driving the coupé testified, the truck turned to the right. In passing, the left rear fender and wheel of the truck came in contact with some part of the coupé upon which plaintiff was riding, causing the coupé to swerve to the left, cross the road and run into a guardpost on the north side of the road.

As a result of the collision the plaintiff was thrown from the coupé and received severe injuries.

At the time of the collision in question, the appellee was accompanying his father on a trip from Rexford, Kan., to eastern Nebraska. They were looking for work and were dividing the expenses of the trip. The plaintiff had no interest in the car. He did not have anything to do with the selection of the road they took, and

did not at any time make any suggestions as to where or when stops were to be made.

The defendant insurance company had filed its policy with the state corporation commission covering the truck of Stadler Brothers as a condition precedent to the issuance of a K. C. C. permit, and the truck was at the time in question being operated in the business of its owners.

Christenson, the driver of the gasoline truck, testified that he observed the lights of the approaching Chevrolet coupé and lights from other cars coming from the west, and that he slowed up to let the plaintiff's coupé pass over the bridge first; that after plaintiff's coupé passed over the bridge it looked as though the coupé were edging over on his side, or the north side of the highway, and that he, Christenson, was on the north or his right-hand side of the highway.

The jury rendered a general verdict for plaintiff and returned special findings of fact.

Appellant first contends that the court erred in overruling the demurrer to plaintiff's evidence. As the testimony of the plaintiff showed that the driver of the truck was negligent in driving on the wrong side of the road, as charged in plaintiff's petition, this contention cannot be maintained unless the plaintiff was guilty of contributory negligence, or unless it be shown that he was engaged in a joint enterprise, and that the driver of the coupé was guilty of negligence, which would be imputed to the plaintiff.

Defendant argues that the manner in which the plaintiff was riding on the coupé was the proximate and actual cause of his injuries. As this is the most serious question raised, we set forth the plaintiff's testimony:

"Q. Now, was that place you were sitting on back there, was that level? A. Yes, almost level.

"Q. Now, you rode that way all day, did you? A. Yes, sir.

"Q. And you didn't have any trouble staying on there? A. No, not at all."

The witness, on cross-examination, stated as follows:

"Q. Now, did that turtle back, or the back compartment there to this coupé, did it have a gradual slant down at the rear, or did it come out about level and then curve down to the rear? A. Came out about level, and then curved down.

"Q. And you had some suitcases and things in the back end there that also kept it open some? A. Yes.

"Q. And that would raise the back end a little bit more? A. Raised the lid a little more, yes.

"Q. Now, while you were riding along there on the back end, did you notice whether or not the suitcases were soft enough that it caused the back end to swing up and down? A. No, they did not.

"Q. It didn't do that, stayed firm, did it? A. Yes."

Under the statement of facts detailed in plaintiff's testimony, must we say the plaintiff was guilty of contributory negligence as a matter of law? Negligence is conduct which creates an undue risk of harm to others. Contributory negligence is conduct which involves an undue risk of harm to the person who sustains it. To bar the plaintiff from recovery, it must appear that his failure to exercise reasonable care for his own protection was a legally contributing cause to his injury. His failure to exercise reasonable care for his own protection is not a legally contributing cause of his injury, unless such conduct was a substantial factor in bringing about his injury.

The plaintiff and his brother had been riding all day in what appears to have been a secure position. The impact with the truck threw the plaintiff to the ground, but the record is silent as to any injury to the brother. It is not shown plaintiff's position on the turtle back was in any degree more dangerous, as regards approaching cars, than any other position in the coupé would have been. In *Hagaman v. Manley,* 141 Kan. 647, 42 P. 2d 946, the injured party was riding in a truck "with his left leg hanging outside the truck bed," and his leg was crushed by the collision. His position was one of peril as to approaching and passing cars, and is not a case parallel to the one before us.

Our attention is directed to *Ferguson v. Lang,* 126 Kan. 273, 268 P. 2d 117, and *Shrewsbury v. Goodacre,* 135 Kan. 230, 10 P. 2d 1. In both of these cases the rule is laid down that where a guest in an automobile has an equal opportunity to see approaching danger, it is his duty to warn the driver. The limits of this rule are stated in Restatement, Torts, § 495. In the case at bar it cannot be contended that the plaintiff had the ability to control the driver, nor an opportunity to warn him of the approaching danger. These cases are not in point. Under the facts in evidence we think the question as to whether the plaintiff was guilty of contributory negligence was for the jury. In answer to a special question the jury found the plaintiff was not guilty of contributory negligence, and we find no reason to disturb that conclusion.

The next contention of the defendant is that the parties were en-

gaged in a joint enterprise and the negligence of the driver of the coupé was imputed to the plaintiff. We do not think this proposition can be maintained. In the first place the jury, in response to a special question, found that the driver of the coupé was not guilty of negligence, and in that finding we concur. Having crossed the bridge he was faced with an emergency. Between the guardrails on his right and the on-coming truck, he was forced to steer his way between the two dangers. We think the record shows that he acted as any reasonably prudent man would have, under the circumstances, and that he was not chargeable with negligence. (*Eaton v. Salyer*, 135 Kan. 411, 10 P. 2d 873.) Defendant insists that the parties in the coupé were engaged in a joint enterprise. As we have found that the father of plaintiff, who was driving the car, was not negligent, the question as to whether there was a joint enterprise is immaterial. We will state, however, the facts fail to show a joint enterprise. The plaintiff did not own the car, and had no control over the driver. The parties had a common destination, but not a common business purpose. (Restatement, Torts, § 491, and comment.) Under the facts in this case the question of joint enterprise was properly submitted to the jury. (*Link v. Miller*, 133 Kan. 469, 300 P. 2d 1105.) The jury in this case found that the occupants of the coupé were not engaged in a joint enterprise.

Defendant requested the court to instruct the jury that the plaintiff and the driver of the car were on a joint enterprise and as a matter of law the negligence of the driver would be imputed to the plaintiff. There was no error in the refusal to give this instruction. As shown above the jury found the driver of the coupé free from negligence, and further found there was no joint enterprise. Negligence cannot be imputed when none exists.

Complaint is made of the refusal to give instruction No. 7 requested by defendant. The court gave the following instruction:

"If the plaintiff was negligent in riding on the Chevrolet car in question in the manner in which the evidence discloses he was riding at the time of his injury, and such negligence was the proximate cause of plaintiff's injury, this would be contributory negligence on the part of the plaintiff, and the plaintiff is not entitled to recover in this action."

As this instruction covers the same ground as the requested instruction, there was no error in the action of the court.

It is next urged that the court erred in overruling defendant's motion for a judgment *non obstante veredicto*. This contention is based on defendant's claim that the jury in its answer to special

question No. 2 found for the plaintiff on a ground of negligence not pleaded. In answer to question No. 2 the jury found that the negligence of the driver of the truck consisted in lack of using ordinary care. The finding is consistent with the general verdict and the other findings, and with the allegations of negligence in the petition. As the defendant did not make any request to the court that the jury be returned with instructions to return a specific answer to the question, it is too late to complain.

Finally, defendant insists the court erred in overruling its motion for a new trial. This contention is based on alleged misconduct of the jury and of plaintiff's counsel, and rulings made by the court at the time the jury first returned to the courtroom with their verdict, and answers to special questions. When first returned by the jury question No. 10 and the answer appeared as follows:

"10. Do you find the injury to the plaintiff was a mere unavoidable accident as between plaintiff and the driver of the truck in question? A. Yes."

From the record it appears that when the jury returned their verdict and special questions they asked if either plaintiff or defendant desired the jury polled. Counsel for plaintiff stated he would like to have the jury polled as to their answer to the tenth question. Counsel for defendant then stated "if any portion of the verdict or special questions requires a polling, I think it is the duty of the court to require an entire polling." In the colloquy that followed, counsel for plaintiff stated several times that he desired the jury polled as to the tenth question, and counsel for defendant insisted if any polling was done it must be as to all questions. When the jury was polled as to question No. 10 one juror stated that he "didn't just exactly understand the question." Over the objection of defendant the court directed the jury to return to their jury room for further deliberation. This was done and the jury returned to the courtroom and gave the answer to question No. 10 as "No."

We are cited to the case of *Thornton v. Franse,* 135 Kan. 782, 12 P. 2d 728, and other cases holding that a statement by the court that the jury should harmonize the answers to the special questions with the general verdict is error. No statement of that kind was made by the court in this case. We have searched the record and fail to find any misconduct of the jury or of counsel for plaintiff.

We wish to add that question No. 10 should not have been given. As shown in this case, it only served to confuse the jury. It clarifies no issue and should have been avoided.

Finding no error in the record, the judgment is affirmed.