No. 33,822

ONA SIZEMORE, *Appellant*, v. MORTON HALL (et al.), *Appellees*.

(80 P. 2d 1092)

Opinion filed July 9, 1938.

*Charles Stephens* and *Jerome Harman,* both of Columbus, for the appellant.

*Fred A. Walker, F. W. Boss* and *Marc. G. Boss,* all of Columbus, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action to recover from a father and son damages sustained in a collision on the highway. At the close of the plaintiff's evidence both defendants filed demurrers thereto, and the court sustained that of the father and overruled that of the son. Later the cause was dismissed without prejudice as to the son, and notice of appeal was served as to sustaining the demurrer of the father.

Questions as to the injury of the plaintiff and the negligence of the son are not involved in this appeal; they are considered as having been established by the evidence. But the main question here for consideration is the liability of the father for the negligence of the son, and in that matter there is involved the question of joint adventure.

The father was not in the car with the son at the time of the collision. He was a half mile away and was going home in the same direction in another car. The plaintiff called the father as one of his witnesses, and he testified mostly about the occasion

which brought him and his son on this highway at the time of the collision, which occurred about 8:30 on an evening in August.

The following are undisputed facts: The son lived at his father's home on a farm. They owned an automobile together. They were working in a harvest field that day a short distance from their home, and when they were ready to go home at the close of the day's work they found the automobile would not start. A neighbor pushed their car to their home. They decided it should be taken to the repair shop at once so as to be ready for use the next day. Jarvis, a son-in-law of the father, was stopping temporarily at the father's home and his car was there in the garage. The father and son decided to borrow the Jarvis car—although Jarvis was not there at the time—and use it to push their car to the repair shop. They did so, and the car was repaired in about fifteen minutes and they started back toward home, the son going ahead in the Jarvis car and the father following in the repaired car. They were traveling in the same direction about a half mile apart when the collision occurred by the Jarvis car running into the wagon driven by the plaintiff, in which collision the plaintiff and one of the mules tied behind the wagon were injured.

The father came up to the place of the collision very shortly after it occurred, and the conversation is given by the different witnesses with some slight variations. The father's name was Morton Hall and the son's name was Milton Hall.

Appellant calls our attention especially to the following testimony of the plaintiff as to the conversation at the place of the collision after the father reached there:

"Q. You may give that conversation as near as you can. A. Morton Hall said they had been over in the hayfield and he said 'we couldn't get our car to run' or get it started, I don't know which. He said they borrowed the Jarvis car to pull it over in the valley to the shop over there to get it fixed and was on their way home when this took place."

Appellant also called attention to a question and answer in the testimony of Morton Hall:

"Q. Mr. Hall, was the accident or collision in this case, or did it rather occur on your way to the garage or coming from the garage? A. Coming from the garage home."

Defendant calls our attention to the following testimony of Morton Hall:

"Q. What use did you make of the Hugh Jarvis car that afternoon or evening? A. You mean that evening on that trip?

"Q. Yes? A. Milton Hall took the Hugh Jarvis car to push this car over to Riverton.

"Q. Over to the garage? A. Over to the garage, yes, sir. . . .

"Q. You couldn't get your partnership car started there on the farm? A. We couldn't get it started in the hayfield where we were at work.

"Q. That was your reason for taking it over to the repair shop? A. Taking it over to get it repaired.

. . . . . . . . . . . . . .

"Q. And for the purpose of pulling it over to the shop, the partnership car, over to the shop? A. Yes, sir.

. . . . . . . . . . . . . .

"Q. I will ask you what arrangement you made with your son to take this car over to the garage, if any? A. . . . . I said, 'Are you boys going away tonight?' Waldo said, 'I have to go to Baxter,' and Milton said, 'I have to go after Hugh (Jarvis). I can take you over there first.'

. . . . . . . . . . . . . .

"Q. Now, after you got the car started where, if any place, did your son go? . . . A. He went to Melrose.

. . . . . . . . . . . . . .

"Q. And where did you go? A. I started for home.

"Q. What road did your son take to Melrose? A. Taken the road straight back the way we had gone."

The only question involved in this appeal is whether the trial court was right in holding as a matter of law that the plaintiff's evidence failed to show joint enterprise at the time of the collision such as to render the defendant, Morton Hall, liable. Of course, in passing on a demurrer to the evidence the court must consider not only the evidence favorable to the plaintiff, but also the surrounding circumstances from which inferences could be drawn in favor of the plaintiff.

Appellant cites authorities as to the rule in passing on a demurrer to evidence that the court must not weigh evidence or decide between conflicting evidence, and we unhesitatingly agree with that rule as expressed in the cases cited; viz., *Acker v. Norman,* 72 Kan. 586, 84 Pac. 531, and *Stallings v. Graham,* 146 Kan. 867, 73 P. 2d 1090. Strictly speaking, there is no conflicting evidence here. The difference pointed out is where the plaintiff quoted the father as saying in the conversation shortly after the collision that they had been to the repair shop to get the car fixed and were "on their way home when this took place," and the father in his testimony, when asked whether the collision occurred on the way to or coming from the garage, said "coming from the garage home." The testimony which appears slightly different from the statements about going "home" from the garage is that which is said about the son having

to go after Jarvis but going to the garage first and then going to Melrose, taking "the road straight back the way we had gone."

Appellant argues that this trip to the repair shop to get the car (which was jointly owned) repaired was not ended until the father and son had gotten back home with the repaired car and the borrowed Jarvis car. The use of the word "home" in the testimony does not seem to make that place the necessary termination of a joint adventure, if such it was. It is not out of harmony with the quoted statement of the son that he had to go after Jarvis, but could go to the repair shop first, and the father's statement that the car was repaired and the son went to Melrose, going on the same road they came. The appellant insists that as a joint adventure by the two owners of the car, it could not end until they returned the borrowed car to the place they got it. That might be the case if Jarvis were the plaintiff and had sued to recover the value of the car or the amount of damage done to it while on such trip. But plaintiff's rights are not enlarged nor lessened by any right or claim that Jarvis might have. It is argued by the defendant that if there was a joint adventure here, it was to get the jointly owned car repaired and that it ended when it was repaired; and the going home, or one going to Melrose and the other going home, was not a necessary part thereof. All we find it necessary to conclude here is that there is no conflict calling for the weighing of the testimony and no substantial inferences that can be drawn from this testimony to supplement the general testimony as to such a joint adventure making the father liable for the negligence of the son.

Counsel for appellant admit frankly that the joint ownership of the car, standing alone, would not make both of the defendants liable for the collision, but they rely upon the joint effort of the joint owners to get the car repaired as making both of the owners liable for the collision which occurred while they were carrying out that effort to have the car repaired.

Appellant cites the following language used in the opinion in the case of *Howard v. Zimmerman,* 120 Kan. 77, 242 Pac. 131, in support of his contention that the father had equal privilege and authority to control the car driven carelessly by the son, although he was a half mile from the place of the collision when it occurred:

"The term 'joint enterprise' is not helpfully elucidated by definition. An enterprise is simply a project or undertaking, and a joint enterprise is simply one participated in by associates acting together. The basis of liability of one

associate in a joint enterprise for the tort of another is equal privilege to control the method and means of accomplishing the common design. If the means employed be an instrumentality negligent use of which inflicts injury, the associate whom the law regards as participating in the conduct of the actor must have had equal control over its use. This control, however, need not have extended to actual manipulation at the time injury was inflicted. It is sufficient that, at the beginning of the enterprise, or as it progressed, or at any time before the tortious event, he possessed equal authority to prescribe conditions of use." (p. 79.)

The interpretation the appellant gives the language used in the opinion goes further than the application thereof to the facts in that case. There both parties were riding in the car involved in the collision, one at the wheel and the other in the back seat, and it was held that the one in the back seat had equal authority as to the road they should take and the speed of the car.

To bring the case at bar under the rule of joint adventure in the driving of the cars back from the repair shop would go to the extent of an equal right to direct and govern the driving of the car. This could not be when they were driving separately and a half mile apart. It was held in *Farmer v. Central Mut. Ins. Co.*, 145 Kan. 951, 67 P. 2d 511, that—

"Parties taking an automobile trip are not engaged in a joint enterprise within the law of negligence unless there is a community of interest in the object and purposes of the undertaking and an equal right to direct and govern the driving of the car, and to determine the point of destination." (Syl. ¶ 3.)

In 45 C. J. 1020 it is said:

"Where persons are engaged in a common or joint enterprise and each has an equal right to direct and control the conduct of the others with respect to the acts or omissions which contributed to cause the injury, the negligence of one of such persons is imputed to each of the others. . . . Each must have some voice and right to be heard in its control and management, and the mere fact that two persons are doing something together does not make each chargeable with the negligence of the other, nor does the fact that they have certain plans in common."

In *Link v. Miller*, 133 Kan. 469, 300 Pac. 1105, it was said:

"Appellant calls attention to the fact that all were on their way to the funeral. He argues that since they were on the journey for a common purpose the venture was a joint one. The fact, however, that the. trip upon which people are engaged has a common purpose is not conclusive upon the question of joint venture. All the surrounding facts and circumstances must be considered. The decision turns upon whether there was mutual purpose and equal privilege of direction and control and whether they were traveling in the same vehicle in pursuit of a common object." (p. 471.) (See, also, 48 A. L. R. 1061.)

The negligence of the son was not in the fact of traveling on a certain road or driving the Jarvis car, concerning which the father might have had a voice or control, but it was alleged to have been in driving at a high and dangerous rate of speed without giving proper attention ahead, without proper lights, giving no horn or other signal, and in driving the automobile into the rear end of plaintiff's wagon, striking said wagon and one of the mules. Under these allegations of the son's negligence, the father, being a half mile away, had no chance or opportunity for the exercise of equal control, direction or management of the car driven by the son, regardless of the question of whether there was a joint adventure in the effort to have the jointly owned car repaired.

It required no weighing of the testimony for the trial court under the facts, circumstances and favorable inferences therefrom to reach the conclusion that the testimony of plaintiff and favorable inferences therefrom were insufficient to establish a liability of the father for the damages claimed by the plaintiff for the negligence of the son.

The judgment is affirmed.