No. 39,854

In the Matter of the Estate of Bernard Ludwig Lloyd, Deceased. (Claim of WALLACE HAVELY, *Appellee*, v. DELLA LLOYD, Administratrix of the Estate of Bernard Ludwig Lloyd, Deceased, *Appellant*.)

(290 P. 2d 817)

Opinion filed December 10, 1955.

*John B. Markham*, of Parsons, argued the cause, and *Elmer W. Columbia* and *Herman W. Smith, Jr.*, both of Parsons, were with him on the briefs for the appellant.

*Jack L. Goodrich*, of Parsons, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action for damages for personal injuries. On August 24, 1954, the petitioner, Wallace Havely, filed a claim against the estate of Bernard Ludwig Lloyd, deceased, in the probate court of Labette County, in the amount of $20,000 for damages sustained by him on December 16, 1953, which were alleged to have been caused by the negligence of the decedent, Bernard Ludwig Lloyd. Mr. Lloyd died of natural causes on March 29, 1954, and his wife, Della Lloyd, was duly appointed and qualified as administratrix of his estate, and is acting as such.

A defense was filed to this petition, and a reply was filed to the defense. The action was duly transferred to the district court for trial. The case was tried to the court and jury in December, 1954. The jury answered special questions and returned a general verdict for plaintiff in the sum of $6,000, which verdict was approved by the court and judgment rendered thereon. The defendant filed a motion for a new trial, a motion for judgment notwithstanding the verdict, and a motion to set aside the verdict and answers to certain special questions, all of which were overruled. Defendant has appealed.

In this court the first alleged error complained of was that the court erred in overruling defendant's demurrer to plaintiff's evidence. The evidence may be summarized as follows:

Plaintiff was a single man twenty-five years of age and lived in St. Paul, Kansas; he worked for Ebasco Servs. Inc., which was building extensive works for the Kansas Electric Power Company at a point on the bank of the Neosho River some eight miles east of Parsons; he drove to and from work. He drove west from St. Paul to U. S. Highway 59, a north and south highway, and south on Highway 59 to Parsons. He had been working for Ebasco Servs. Inc. for about seven months as a laborer at $1.50 per hour and time and a half for overtime, which usually amounted to about eight hours a week. On the morning of January 16, 1953, he left home about 6:15 a. m. alone in his car, which was a black 1939 Ford tudor. About two months prior to that he had had the lights worked on and they were in good condition when he left home. He proceeded south on Highway 59 towards Parsons, and when he was at a point a little more than half a mile from Parsons his lights went out. It was dark, and the weather was cold. He testified:

". . . When the lights went out I pulled over to the side of the road and stopped. I don't recall the position my car came to when it stopped with reference to the right shoulder of the road. I couldn't see where I was going after the lights went out. . . ."

After the car stopped he reached over to the glove compartment and got a fuse and opened the door on the left-hand side of the car and got out. He looked both north and south and couldn't see any cars approaching or any lights. U. S. Highway 59 crosses the M. K. T. Railroad tracks on an overpass about two miles north of Parsons. From there to Parsons the road is com-

paratively level. Six tenths of a mile north of Parsons the same railroad has a grade crossing over Highway 59, at an angle of forty-five degrees from northeast to southwest, where there is a blinker signal light.

The fuse box on the car was on the left side of the steering wheel up under the dashboard. In order to reach the fuse box he sat down on the running board and laid back to reach up under the dashboard, his head and shoulders were inside the car and his feet were down off the running board. While in that position he did not see or hear any vehicles pass going either north or south. He wasn't in that position more than one or two minutes before he was struck by a GMC truck driven by the decedent Lloyd. He was pulled out of the car onto the pavement. He had a comminuted compound fracture of his left leg and scratches on his head and face, and pain in his chest. Soon an ambulance came. He was found to be practically unconscious and suffering from shock; he was taken to Mercy Hospital at Parsons.

Mr. Lloyd was sixty-two years of age, and he and his wife lived in Parsons; he was an independent contractor employed by the Sally Ann Bakery of Parsons in which capacity he operated a regular route selling bread and bakery products. On the morning of December 16, 1953, he went to the bakery about 2:15 a. m. and loaded his truck with bakery products, which he took to Iola, Kansas. He had done this every morning for about two years, and continued until his death in March, 1954. Normally, he would get back home about 6:30 in the morning.

James R. Vail testified he had been a police patrolman and cruiser in Parsons for two years and while acting in that capacity he got a call at 6:40 a. m. about the accident; that Dorman Beasley, a patrolman, was with him in the patrol car at that time and they went to the accident, which was 220 feet north of the Katy Railroad tracks crossing; that they found a 1939 black Ford tudor, and directly behind it was a 1953 GMC panel truck; that the ambulance driver, Joe Carson, and Beasley placed Havely in the ambulance; that when they first drove up he (Vail) asked Havely if he wanted to be moved and he said no; and, that Mr. Lloyd was there and he had a conversation with him in the presence of Beasley. He said,

"I asked him what happened, and he said that he was coming from the north about forty-five miles an hour, and I asked him what happened, and he said, 'Well, I was in the process of looking up the railroad track before I got there

to the railroad crossing, and I was looking to the southwest, and when I looked back there, the other car was right in front of me, and I couldn't swerve it fast enough. I tried to miss it, but I hit the side of it, so I went on to a place where I could turn around.' "

He further testified Lloyd said he had gone south and turned around and came back by the Ford and turned around again and pulled up directly behind the Havely car with his headlights on it. The witness took a tape measure to determine the position of the Havely vehicle on the highway with reference to the shoulder. From the center line of the road to the front wheel of the Havely car measured four feet seven inches, and from the center line to the back wheel of the Ford it was four feet five inches. The highway measured twenty-three feet wide without the shoulder or chat. The witness testified that the distance from the car to the outside of the shoulder was about twenty feet. He further testified that on the right-hand side of the road near the crossing is a railroad sign with a red flasher, which flashes a red light when lighted; that it is an automatic device and operates only when there is a train or engine approaching the crossing. He estimated that the sign would be visible for about a quarter of a mile, perhaps farther.

Beasley's testimony was substantially in accordance with that of Vail. He testified there were no lights on the Havely car when they arrived. The witness gave as his judgment there was open, unobstructed highway to the east of the Havely Ford of twenty feet.

B. R. Joseph, a deputy sheriff of Labette County, testified he received a call on December 16, 1953, about 7:00 a. m. and went to the scene where he found the two automobiles on the highway, facing south, together with Officers Beasley and Vail of the police department, and also Mr. Lloyd; that Havely had been removed from the scene before he arrived; that with the assistance of the two policemen he made a report of the collision and in doing so he observed the location of the Havely vehicle with reference to the west shoulder of the road. He testified the right front wheel of the Havely car was on the thoroughfare portion of the black top with reference to the west shoulder of the road. He made no measurement of the distance from the vehicle to the east edge of the shoulder but gave as his judgment, approximately seventeen feet. He had a conversation with Mr. Lloyd at the scene, and testified:

". . . and he stated that he was going down the highway and he was watching the signal crossing and that he did not see the man or the vehicle, . . ."

On re-direct examination he testified:

"Mr. Lloyd's statement to me at the time and place I recorded it, at the time of my investigation, was that he was looking at the Katy crossing signal."

Defendant demurred to plaintiff's evidence on the ground that the evidence failed to prove a cause of action against defendant or to warrant any recovery against her, and further that plaintiff's evidence proved that plaintiff was guilty of contributory negligence as a matter of law. The demurrer was overruled.

Arguing the point that defendant's demurrer to the evidence should have been sustained, counsel for appellant stress the fact shown by the testimony of Havely that when his car stopped he did not get out and walk in front of it to see just what distance he could have driven farther to the right, and also stress the fact that he could have opened the right door of his car instead of the left one, in which event he would have been in a much safer position than he was, but the rule has been announced many times that when a person meets a situation, which is an emergency and requires prompt action, as Havely's position did at that time, the fact that he chose to act in a way that was not as safe as some other way might have been, does not necessarily convict him of contributory negligence. See, *Spohn v. Southern Kansas Stage Lines,* 142 Kan. 595, 50 P. 2d 1001; *Hill v. Southern Kansas Stage Lines Co.,* 143 Kan. 44, 53 P. 2d 923; and, *Farmer v. Central Mut. Ins. Co.,* 145 Kan. 951, 67 P. 2d 511, and authorities cited therein.

In this connection counsel for appellant cite G. S. 1949, 8-570. But, there is a serious question, in view of subsection (*b*), whether it has any application here. Counsel also cite G. S. 1949, 8-592, but this pertains to multiple-beam road-lighting equipment. The evidence does not clearly disclose how it would affect the decision in this case. Counsel for appellant argue that the evidence discloses that Havely violated some portion of one of the above sections, but the simple fact that a person violates a section of the statute does not, of necessity, establish a fact that he is guilty of negligence as a matter of law. It must further be established that such violation of the statute was a proximate cause of the injury. In *Crawford v. Miller,* 163 Kan. 718, 186 P. 2d 116, it was held:

"In an action to recover damages to property sustained in a motor-vehicle collision mere violations of an ordinance or statute regulating traffic upon the streets and highways by the plaintiff are not in themselves sufficient to make him guilty of negligence which will bar his recovery as a matter of law. To

prevent his recovery it must appear that his violations of such traffic regulations were the proximate and legal cause of his injuries."

Citing and quoting from many earlier cases, which need not be recited here.

In *Cain v. Steely*, 173 Kan. 866, 252 P. 2d 909, it was held:

"The question whether a plaintiff is guilty of contributory negligence must be submitted to a jury, if the facts of record are such that reasonable minds, in the exercise of fair and impartial judgment, might reach different conclusions thereon."

In *Tuggle v. Cathers*, 174 Kan. 122, 254 P. 2d 807, at p. 127 of the opinion the court had this to say:

"It is also a well-established rule in this state that in determining whether a plaintiff is guilty of contributory negligence when tested by demurrer, the question must be submitted to the jury if the facts are such that reasonable minds might reach different conclusions thereon. (*Cain v. Steely*, supra; *Hill v. Hill*, 170 Kan. 721, 228 P. 2d 713; *McCracken v. Stewart*, 170 Kan. 129, 223 P. 2d 963; *Hukle v. Kimble*, 169 Kan. 438, 219 P. 2d 434; West's Kansas Digest, Negligence, § 136 [9]; 4 Hatcher's Kansas Digest [Rev. Ed.], Negligence, § 75.)"

Considering the many elements to be taken into account we cannot say as a matter of law that the plaintiff was guilty of contributory negligence which barred his recovery.

We think the question of Havely's negligence might properly have been submitted to the jury, but it was not. Special questions and answers are as follows:

"1. Do you find that plaintiff's injuries were the result of an unavoidable accident, as defined in the Court's instruction? ANSWER: No.

"2. Please state how far west, in feet, the left wheels of the plaintiff's car were from the center line of the road at the time of the collision. ANSWER: Front wheel 4' & 7". Rear wheel 4' & 5".

"3. Please also state how many feet it was from the right wheels of plaintiff's car to the West edge of the west shoulder of the road. ANSWER: Approx. 5 to 6 ft.

"4. How long was it after plaintiff stopped his car before the collision occurred? ANSWER: From 1 to 2 minutes.

"5. Did plaintiff observe decedent's truck at any time before the collision? ANSWER: No.

"6. If you answer Question No. 5 in the negative, could plaintiff have seen the approaching truck had he looked? ANSWER: The plaintiff could have seen the truck at the time he looked if the approaching truck had been in sight. (No. 7 to be answered if question 5 was answered in the affirmative.)

"8. How many feet west of the center line of the road was plaintiff when the collision occurred? ANSWER: Estimated 3 ft.

"9. Do you find defendant guilty of negligence which was the proximate cause of plaintiff's injuries? ANSWER: Yes.

"10. If you answer Question No. 9 in affirmative, please state of what act or acts of negligence you find defendant guilty. ANSWER: The defendant failed in his duty to drive at a speed that would permit him to stop within the distance that his lights enable him to discern persons or objects on the highway ahead of him."

In the course of the closing argument for the plaintiff counsel referred to question No. 1 submitted to the jury on unavoidable accident, as a trap. Defendant objected to the statement; the court sustained the objection, and admonished counsel to keep within the issues. Later in his argument counsel for plaintiff made a statement to the effect that a recovery for him would not cost the defendant a dime. After the close of the argument defendant filed a written objection to the statement, which was sustained. When the general verdict and answers to special questions were returned by the jury counsel for defendant moved the court to direct the jury to return to the jury room and make a more specific answer to question No. 6. The motion was denied, and defendant complains of that ruling, contending the answer was ambiguous, and it should have been definite. We are inclined to the view that the answer was about as definite as the jury could make it. The time Havely was working to get his lights repaired, as testified by him and found by the jury, was from one to two minutes, which obviously was an estimate. Lloyd is quoted as saying he was driving his truck "about forty-five miles per hour," also an estimate, but the jury was justified in believing he was going that fast. At forty-five miles per hour his truck moved sixty-six feet per second, 3,960 feet per minute, and 7,920 feet in two minutes. Lloyd's truck may not have been south of the overpass when Havely looked, yet the evidence discloses that Havely had not completed the repairs on his car when he was struck. So, the time that he was there may have been shorter than two minutes. One witness testified that at the point of the accident one could see a car coming from the north in the daytime a mile away, but in the nighttime the distance one could see the lights of an on-coming car would depend upon the strength of the lights, and various other factors. He expressed no view of the distance it could be seen.

Within due time after the filing of the verdict counsel for defendant filed a motion for a new trial, largely on statutory grounds, but included this:

"Misconduct of counsel for plaintiff in the presence of the jury, which was responsible for the excessive verdict."

Counsel for defendant on the same day filed his affidavit of the matters he complained of in the closing argument of counsel. Della Lloyd filed a similar affidavit. Later, with permission of the court, counsel for plaintiff filed his affidavit denying in part and explaining in part the matters charged against him in his closing argument.

Counsel for defendant also filed a motion for judgment notwithstanding the verdict, "for the reason that the special verdict, the special questions and answers thereto given by the jury show that respondent is entitled to judgment." He also filed a motion to set aside the verdict and the answers to special questions No. 1, 6, 9 and 10 on the grounds that the answers to the special questions were not supported by the evidence and were contrary to the evidence.

The motions came on for hearing December 22, 1954. After argument, for the purpose of receiving written briefs of the parties and of reviewing the record, the court took the motions under advisement and gave the parties two weeks to file briefs.

Thereafter, and on January 19, 1955, the court denied each of the motions, approved the verdict of the jury, and rendered judgment for plaintiff for $6,000.

This was largely a fact case. The plaintiff was not guilty of contributory negligence as a matter of law. His negligence was never submitted to the jury. There is no serious complaint about the instructions given or the rulings of the court upon admission or exclusion of evidence. There is no controversy about the amount of the verdict. The parties were represented by able counsel who contested, with vigor, every point. The court took time to consider the case. We have examined all the authorities cited by counsel but find it unnecessary to comment on them.

We find no error in the record. The judgment of the trial court is affirmed.