No. 46,832

Opal R. Fairbanks, *Appellant,* v. Alexander Hodschayan, Jenell D. Todd, Val Terschluse, and Robert L. Snell, *Appellees.*

(512 P. 2d 1042)

Opinion filed July 14, 1973.

*Eugene Riling,* of Riling, Riling and Burkhead, of Lawrence, argued the cause and was on the brief for Appellant.

*Bill E. Fabian,* of McAnany, Van Cleve and Phillips, of Kansas City, argued the cause and was on the brief for Alexander Hodschayan, Appellee.

*Jerald L. Rushfelt,* of Smith, Rushfelt, Mueller and Lamar, of Kansas City, argued the cause, and *Clifford T. Mueller,* of the same firm, was with him on the brief for Jenell D. Todd, Appellee.

*Roger D. Stanton,* of Weeks, Thomas, Lysaught, Bingham and Johnston, Chartered, of Overland Park, was on the brief for Val Terschlusa, Appellee.

*John J. Ziegelmeyer,* of Kansas City, was on the brief for Robert L. Snell, Appellee.

The opinion of the court was delivered by

FATZER, C. J.: This is an appeal from a judgment in favor of the defendants in an action to recover damages resulting from injuries sustained in a five-car automobile collision on the Kansas Turnpike.

In the order of their arrival at the scene of the collision, the vehicles were operated by Alexander Hodschayan, Jenell Todd, Val Terschluse, and Robert Snell, the defendant-appellees, and Frank Fairbanks, husband of the plaintiff-appellant who was his wife and a passenger in his automobile. The collision occurred on the south or passing lane of the westbound traffic side of the Kansas Turnpike at a location approximately one mile east of the Lawrence service area.

On July 5, 1968, at approximately 7:00 p. m. Hodschayan was operating a Chrysler station wagon which was between eighteen and twenty feet in length. He was in the eastbound lane attempting to pass a truck when his vehicle was hit by it, causing his vehicle to cross the medial divider onto the westbound lane. He was traveling at about 70 to 75 miles per hour. There had been showers during the day and at the time of the collision there was a heavy rain at the scene.

The two westbound lanes were each about twelve feet in width. The Hodschayan vehicle came to rest in the south or passing lane, after crossing the medial divider—facing slightly southeast—the front end was near the medial and the rear end was extending into the right or north driving lane. Hodschayan could not back to straighten up his vehicle and go west because of traffic passing on the right lane. The flip across the medial had been quite rugged and Hodschayan, his wife and two sons who were passengers in the station wagon got out to see if anyone was hurt.

Hodschayan testified that after the inspection he went east of where his vehicle had stopped in order to flag down traffic. His son got the car headed west and they started to go forward when the collision occurred.

Jenell Todd and her passenger, Janice White, entered the Turnpike at Kansas City and were traveling west towards Salina. It began raining shortly after they passed Bonner Springs and Miss Todd reduced her speed to approximately 60 miles per hour as

the rain increased in intensity. As Miss Todd neared the collision scene she was driving in the left westbound lane and was moving past a line of slower moving vehicles in the lane to her right. Her vehicle was white in color and its lights were on. When Miss Todd was approximately 600 feet from the accident scene she saw the station wagon of Hodschayan stopped in the roadway ahead of her. The station wagon was facing generally southeast and was completely blocking the left lane and was partially blocking the right lane. Miss Todd realized that it would be dangerous to attempt to cut into the line of traffic to her right in an effort to circumvent the station wagon so she applied her brakes and came to a controlled stop in the left lane approximately ten feet from the station wagon. A truck in the right westbound lane stopped by the Todd automobile blocking traffic so that the Hodschayan station wagon had room to maneuver.

As soon as traffic in the right lane stopped moving, the Hodschayan station wagon began maneuvering back and forth across both westbound lanes as it attempted to get straightened out and headed back toward the west. Miss Todd's lane of travel was at least partially obstructed by the station wagon while these maneuvers were taking place and she made no attempt to go around the station wagon during this time because she was afraid she might move into its path and collide with it. The station wagon eventually came to a rest facing west directly in front of the Todd vehicle, but Miss Todd could not then go around the station wagon because traffic in the right lane had begun moving forward again. The Terschluse automobile had stopped behind Miss Todd while she was waiting for the station wagon to clear the roadway, and Robert Snell was slowing to come to a stop behind the Terschluse vehicle when the Fairbanks' automobile struck him from behind, initiating a chain reaction collision.

The highway patrolman who investigated the accident testified that it was illegal for vehicles to back up on the traveled portion of the Turnpike or to drive into the medial area which separated the eastbound lanes from the westbound lanes. He also testified that a car would have had to go into the medial strip in order to get off to the left side of the westbound lanes and that the condition of the medial strip when he arrived at the scene was such that if any vehicle had stopped in that area it would have had to have been towed out.

Val Terschluse testified that the Hodschayan station wagon was

stopped and was blocking both westbound lanes as he approached the accident scene. He did not move over into the right-hand lane as he was approaching the scene because other moving traffic was already occupying that lane. It was his judgment that the positions of the vehicles on the roadway were such that at no time prior to the collision would it have been possible for the Todd vehicle to have passed around the front of the station wagon.

Robert Snell testified that as he approached the accident scene he observed that the Hodschayan station wagon was effectively blocking both westbound lanes of the Turnpike.

Frank L. Fairbanks, the appellant's husband, testified that as he neared the accident scene he decided to pass a truck which he had been following for approximately three miles. It was raining heavily and as he accelerated to pass the truck the rain became even more intense. As he was in the act of passing, his visibility was limited by water, mud and slush that was sprayed up onto his windshield and he knew from experience that his visibility would not improve until he was completely past the truck. He did not see the appellees' vehicles until he was approximately 150 to 200 feet away from them and he then applied his brakes but was unable to stop in time to avoid a collision. He estimated the speed of his automobile at the moment of impact to be 60 to 65 miles per hour.

The appellant, Opal R. Fairbanks, was a front seat passenger in the automobile driven by her husband. At no time during the events immediately preceding the collision did she say anything to her husband about the way he was driving and she did not caution him against attempting to pass the truck under the conditions which existed.

The Fairbanks' automobile was the fifth car which supplied the force initiating the chain reaction collision. Opal Fairbanks was seriously injured and brought an action for damages against the drivers of the first four cars involved in the collision, to-wit: Alexander Hodschayan, Jenell D. Todd, Val Terschluse and Robert Snell. After a lengthy trial, the jury returned a verdict in favor of all the defendants. Post-trial motions were denied and the plaintiff has appealed. The appeal has been abandoned as to the appellees Val Terschluse and Robert Snell.

The appellant in her statement of points specifies eleven trial errors. They are argued at random in her brief without any attempt

at classification or division of points. We may consolidate a number of her contentions as follows: The district court erred in failing to sustain plaintiff's motion for a directed verdict on the question of liability of the defendants; in accepting the jury's verdict which was wholly contrary to evidence; in overruling her motion for a new trial, and in overruling her motion for judgment notwithstanding the verdict.

It will be well if we first consider the rule which governs this court in considering evidence following a jury verdict. This court expressed itself on this question in the recent case of *Cersovsky v. Cersovsky,* 201 Kan. 463, 441 P. 2d 829, where it is stated:

". . . We, as an appellate court, are not concerned with conflicting evidence or the weight and credibility of the witnesses' testimony; the trier of facts has the responsibility of weighing the evidence and determining what testimony will be believed. We are interested only in evidence which supports a trial court's findings and not with that tending to establish findings to the contrary. If the record discloses substantial competent evidence to support the findings of the trial court, they will not be disturbed on appeal. (*Service v. Pyramid Life Ins. Co.,* 201 Kan. 196, 440 P. 2d 944; *Griffin v. Price,* 199 Kan. 649, 433 P. 2d 464; *Horton v. Montgomery Ward,* 199 Kan. 245, 428 P. 2d 774.) . . ." (1. c. 466, 467.)

In addition to the facts already stated, Mrs. Hodschayan's testimony was summarized as follows:

"Her husband did not lose control of the car while passing the truck in the eastbound lane of the Kansas Turnpike, but the truck came over and hit him and forced him into the medial strip and across to the westbound lane of traffic on the Kansas Turnpike."

We also quote from Jenell Todd's summarized testimony:

". . . The cars in front of her in the driving lane were traveling at a speed slower than hers and she was decreasing the distance between her vehicle and the cars to her right in the driving lane somewhat. She started slowing her vehicle at the point about 600 feet back from the Hodschayan vehicle. She continued on in the left lane and came to a steady stop but did not look at her speedometer during this time. She does not feel that during the 600 feet she could have safely turned into the driving lane because there were other cars coming from behind in that lane but she does not know how far back they were from her vehicle. . . ."

No useful purpose would be served in setting forth additional evidence. It was ample to absolve the defendants Hodschayan and Todd from any negligence if the jury saw fit to believe it. The district court did not err in refusing to direct a verdict on the question of liability for appellant or in denying her relief from the verdict.

The appellant contends the district court erred in instructing the jury regarding her alleged negligence, and acts of negligence relied upon by the defendants and charged against Frank L. Fairbanks, when there was no evidence to support such negligence. The point is not well taken. It will suffice to say there was sufficient evidence to justify submission of the question of negligence on the part of plaintiff and her husband, to the jury. In *Schenck v. Thompson*, 201 Kan. 608, 443 P. 2d 298, we held:

"Ordinarily, the existence of contributory negligence is a question of fact, it being for the jury to determine from the circumstances of each particular case whether the conduct of a party was such as would be expected of a reasonably prudent person. In ascertaining whether as a matter of law a plaintiff is contributorily negligent, the evidence and all inferences that may reasonably be drawn therefrom must be accepted as true and considered in the light most favorable to the plaintiff; and if the facts be such that reasonable minds might reach different conclusions therefrom, the issue of contributory negligence must go to the jury." (Syl. ¶ 1.)

The appellant appears to lay particular stress on the district court's instruction 23, subparagraph 8. At the risk of unduly extending this opinion we quote the instruction.

"K. S. A., Sec. 8-570 provides as follows: Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of the highway, but in every event a clear and unobstructed width of at least twenty feet of the highway opposite the standing vehicle shall be left for the free passage of other vehicles, and a clear view of the stopped vehicle shall be available from a distance of 200 feet in each direction upon such highway.

"The Kansas laws further provide that the above provisions shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position."

We find in appellant's unclassified brief, the following statement:

"The entire evidence by all of the parties showed that none of their vehicles were disabled and especially Mr. Hodschayan's vehicle, which was driven away from the scene of the collision immediately after the collision and driven back to St. Louis, Missouri, on the same evening."

It would appear appellant places too narrow a construction on the provisions of K. S. A. 8-570, which reads in part:

"(a) Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway

when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least twenty feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of 200 feet in each direction upon such highway."

However, subsection (b) of K. S. A. 8-570 provides:

"This section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position."

It should first be noted the mere violation of a statute regulating traffic is not of itself sufficient to make the driver guilty of actionable negligence. Before he is liable it must appear the violation contributed to the injury and was the proximate cause of it. In the case of *In re Estate of Lloyd,* 178 Kan. 572, 290 P. 2d 817, it was said:

". . . Counsel for appellant argue that the evidence discloses that Havely violated some portion of one of the above sections, but the simple fact that a person violates a section of the statute does not, of necessity, establish a fact that he is guilty of negligence as a matter of law. It must further be established that such violation of the statute was a proximate cause of the injury. . . ." (l. c. 576.)

The statute was not violated if the vehicles of Hodschayan and Todd were "disabled" while on the highway making it impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.

What constitutes a disabled vehicle? This court has stated that the statute denounces voluntary stopping at the wish or desire of the driver. (*Applegate v. Home Oil Co.,* 182 Kan. 655, 663, 324 P. 2d 203.) It has no application where conditions compel the stopping. In *McCoy v. Fleming,* 153 Kan. 780, 113 P. 2d 1074, this court held:

"Where an accident between cars using a highway outside a business or resident district causes the highway to be obstructed, and a driver of another automobile approaching the place of the accident is compelled to stop and stops upon the paved portion of the highway, such driver is not guilty of a violation of G. S. 1939 Supp., 8-570." (Syl. ¶ 1.)

In the opinion it was said:

"Appellant argues that it was practical for plaintiff to have moved off the paved portion of the highway and onto the shoulder thereof, and that because he didn't do so he violated the statute. That argument ignores the latter part of

the statute and the factual situation. The highway was blocked by the first collision which caused the succeeding traffic to stop. The record is silent as to the condition of the cars there involved, but that their condition caused a stoppage in the flow of traffic is admitted. No one of the cars in that line of traffic may be said to have been stopped at the wish or desire of the driver— and that is what the statute denounces—but because conditions ahead compelled the stopping. Under the conditions existing and in the exercise of ordinary care, it was impossible for drivers of the cars in the line of traffic and for the plaintiff to avoid stopping. The fact plaintiff did not drive his car farther to the right, or on the shoulder of the highway, did not make him guilty of violating the above statute. . . ." (l. c. 782.)

Again, in *Bottenberg Implement Co. v. Sheffield,* 171 Kan. 67, 229 P. 2d 1004, this court stated:

"When considered as a whole, the trial court found that the defendants stopped their truck, not voluntarily as found by its first finding No. 7, but as the result of gasoline spilling on the engine as found by second finding No. 6 and the amplification thereof. The last mentioned findings are not general— they are specific. The danger of fire from spillage of gasoline on a running engine is so well understood that it is fruitless to argue that stopping the truck to remedy the defect was not a compelled stop. The stopping under the circumstances created an exception under the statute and under the facts found was not an act of actionable negligence." (l. c. 71.)

See, also, *Towell v. Staley,* 161 Kan. 127, 166 P. 2d 699, and *Martin v. National Mutual Casualty Co.,* 169 Kan. 110, 114, 217 P. 2d 1055.

The jury returned a general verdict in favor of defendants. No special questions were submitted. A general verdict for defendants, without special questions, resolves all controverted questions of fact against the plaintiff. A general verdict will not be disturbed on appeal if there is any evidence or inferences to be drawn therefrom which support the verdict. (*Cole v. Dirkson,* 202 Kan. 431, 433, 449 P. 2d 584.)

Accepting as a fact the testimony to the effect that Hodschayan did not lose control of his vehicle while passing a truck in the eastbound lane of the Kansas Turnpike but that the truck came over and hit his vehicle, forcing him across the medial strip and onto the westbound lane of traffic, there would be no violation of K. S. A. 8-570.

Also, accepting as a fact the testimony that Miss Todd was forced to stop behind the Hodschayan station wagon becuse traffic prevented her entering the outer lane, there would be no violation of K. S. A. 8-570.

After a careful consideration of the record and other alleged errors, we find nothing that would justify the granting of a new trial. The judgment is affirmed.

SCHROEDER, J., dissents.